IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. **12-cr-00010-MSK-16**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. GEORGE H. ASKEW,
2. ROMELL E. BULLOCK,
3. GREGORY A. COLLINS,
4. GEORGE A. GADDY,
5. DELBERT J. GARDNER,
6. RICHARD W. JOHNSON,
7. SHEPS H. KHAMSAHU,
8. ERIC LUGO,
9. LAWRENCE T. MARTIN,
10. JOHNIE A. MYERS,
11. DARRELL R. PARKER,
12. CALVIN R. RILEY,
13. COREY L. RILEY,
14. THOMAS A. ACHRAH, JR.,
15. JAMES R. SWITZER, and
16. **CLIFFORD M. WRIGHT,**

      Defendants,

---

**MOTION FOR NON GUIDELINE SENTENCE PURSUANT TO TITLE 18, UNITED STATES CODE, SECTION 3553**

---

**COMES NOW** Ronald J. Hahn CJA attorney at law, on behalf of Clifford M. Wright, and hereby presents this Motion For Non Guideline Sentence pursuant to 18 U.S.C. § 3553.

The government has agreed in the Plea Agreement, to file a motion pursuant to §5K1.1 for a 30-40% downward adjustment from the bottom of the applicable guideline range in exchange for Mr. Wright's plea and cooperation. Such a downward departure would put Mr. Wright in Zone B

of the guidelines. Mr. Wright seeks a sentence of home confinement followed by a three year term of supervised release based upon the grounds and circumstances raised herein.

## DISCRETIONARY SENTENCING UNDER *BOOKER*

The Court should examine the history and characteristics of the Defendant. 18 U.S.C. 3553(a)(2). In fashioning a sentence, the Court is instructed under 18 U.S.C. 3553(a)(2) to create a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence to criminal conduct, protects the public from further crimes of the defendant and provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. This requires the Court to balance the needs of society with the needs of the individual.

Since the Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2004), the guidelines are considered only as one factor in arriving at a reasonable sentence. Reasonableness should be defined in terms of how a given sentence satisfies the goals articulated in the still valid provisions of the Sentencing Reform Act in 18 U.S.C. 3553. In examining 18 U.S.C. 3553(a) the Court is directed to examine the nature and circumstances of the offense. In *Booker*, id. the Supreme Court stated that Courts should base punishment upon real conduct that underlies the crime of conviction. In determining the minimally sufficient sentences, § 3553(a) further directs sentencing courts to consider the following factors:

1) "the nature and circumstances of the offense and the history and characteristics of the defendant" § 3553(a)(1);

2) "the kinds of sentences available" § 3553(a)(3);

3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct § 3553(a)(6); and

4) "the need to provide restitution to any victims of the offense. "§ 3553(a)(7).

The directives of *Booker* and § 3553(a) make clear that courts may no longer uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in *Booker*, rejecting mandatory guidelines sentences based on judicial fact-finding, and the remedial majority in *Booker*, directing courts to consider all of the § 3553(a) factors, many of which the guidelines either reject or ignore." *United States v. Ranum*, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.).

As another district court has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker. "*United States v Jaber,* 362 F. Supp. 2d 365, (D. Mass. 2005) (Gertner, J.). See also *United States v Ameline,* 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"), reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005).

*Booker* was further interpreted in *Rita v. United States*, 127 S.Ct. 2456 (2007) and *Gall v. United States*, 218 S.Ct.586 (2007). In *Rita*, the Supreme Court directed judges "to 'impose a sentence sufficient, but not greater than necessary, to comply with the basic aims of sentencing" in § 3553(a), *Rita* at 2463 (2007), which include the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to create adequate deterrence; to protect the pubic from further crimes of the defendant; and to provide the defendant

3

with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," 18 U.S.C. § 3553(a)(2).

*Gall*, which refined the holding in *Rita*, which in turn refined *Booker*, held that a sentencing judge, when imposing a sentence, is first required to correctly calculate the sentencing guideline, which is to be considered the starting point of any sentencing analysis. In *Gall*, Justice Stevens goes on to state that the sentencing guidelines are not the only consideration to determine a reasonable sentence. "The guidelines are not mandatory, and thus the range of choice dictated by the facts of the case is significantly broadened. "*Gall*, 128 S.Ct. at 602. *Gall* requires that in addition to considering the Guidelines, the "district judge should… consider all of the 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guideline range is reasonable. He must make an individualized assessment based on the facts presented." *Gall*, at 596-97. Section 3553(a)(1) also gives sentencing courts "a broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *Gall*, 128 S.Ct. 596 n.6. A court may issue a below-Guideline sentence even in the absence of extraordinary circumstances. *Gall* at 595. If the sentencing Judge makes an outside the guideline sentence, the Judge must then consider the extent of the variance and make sure it is supported by the facts of the case.

The following cases are illustrative of the proposition that the guidelines proposed a guide to consider in addition to all other factors and characteristics of the defendant in determining the appropriate sentence. See *United States v. White*, 551 F.3d 381. 386 (6th Cir. 2008) (all guidelines); *United States v. Seval*, slip op., 2008 WL 4376826 (2d Cir. Sept. 25, 2008) (fast track); *United States v. Liddell*, 543 F.3d 877 (7th Cir. 2008) (career offender); *United States v. Vanvliet*, 542 F.3d

4

259 (1st Cir. 2008) (computer enhancement under § 2G1.3); *United States v. Tankersley,* 537 F.3d 1100 (9th Cir. 2008) (all guidelines); *United States v. Jones,* 531 F.3d 163 (2d Cir. 2008) (all guidelines); *United States v. Boardman,* 528 F .3d 86, 87 (1st Cir. 2008) (career offender); *United States v. Rodriguez,* 527 F .3d 221 (1st Cir. 2008) (fast track); *United States v. Martin,* 520 F .3d 87-96 (1st Cir. 2008) (career offender); *United States v. Barsumyan,* 517 F.3d 1154, 1158-59 (9th Cir. 2008) (all guidelines); *United States v. Sanchez,* 517 F. 3d 651, 662-65 (2d Cir. 2008) (career offender); *United States v. Beiermann,* __F. Supp. 2d __, 2009 WL 467628 (N.D. Iowa Feb. 24, 2009); *United States v. Thomas,* __F. Supp. 2d__, 2008 WL 188037 (E.D. Wis Jan. 24, 2009) (all drug guidelines); *United States v. Moreland,* 568 F. Supp. 2d 674 (S.D. W. Va. 2008) (career offender).

## EFFECT OF PLEA AGREEMENT

Mr. Wright's plea was entered pursuant to a plea agreement with the government. In exchange for Mr. Wright's plea, past and future cooperation, the government agreed to request that Mr. Wright receive a two-level decrease for timely acceptance of responsibility and further to file a Motion pursuant to section 5K1.1 of the sentencing guidelines recommending a downward departure of 30-40%. Such a downward departure would place Mr. Wright in Zone B for guideline's purposes.

## A SENTENCE T IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO ACHIEVE THE PURPOSES OF 18 U.S.C. §3553(a)

The touchstone of sentencing in the federal system is that the Court should impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. §3553(a). Careful review of those factors, as set forth below, suggests the conclusion

that any sentence within or above the guidelines ranges would be greater than necessary to achieve the statutory objectives in sentencing.

## RELEVANT §3553(a) FACTORS

1. NATURE AND CIRCUMSTANCES OF OFFENSE:

Mr. Wright although charged in conjunction with the Hell's Lovers Motorcycle Club case was not a member of the Hell's Lovers. He was instead a member of the Street Soldiers Club, which was a social club for motorcycle enthusiasts devoid of initiation rituals and of commitment to the club lifestyle. Members of the Street Soldiers interacted with the Hell's Lovers but were never part of that outlaw club. Mr. Wright had known the C.I. who ultimately purchased drugs through him for at least six (6) years. Mr. Wright knew that the C.I. had been beaten by members of the Hell's Lovers and kicked out of that organization. The C.I. contacted Mr. Wright on numerous occasions and cried the blues to Mr. Wright saying that he had no money, couldn't work and had no ability to support his children. This tactic struck a sympathetic cord with Mr. Wright because of a fairly recent suicide of his son and consequently Mr. Wright made some calls and acted as a middle man to supply the C.I. with cocaine which he assumed the C.I. would then sell.

2. HISTORY AND CHARACTERISTICS OF THE DEFENDANT:

As set forth in the PSIR, Mr. Wright's circumstances have changed significantly in the past few years. One of Mr. Wright's children, Evan, committed suicide in 2008. This is something that Mr. Wright still struggles with. Mr. Wright for the past three years has been the single custodial parent for his son Tate, age 11. Further since May 2012 Mr. Wright has also been caring for his mother, who moved to Colorado because she cannot care for herself and Mr. Wright was willing to care for her. Please see the attached Exhibit 1, a letter from Mr. Wright's father which describes

6

some of these circumstances. Furthermore since December 2011, Mr. Wright has been involved with purchasing and establishing a business at 1432 Tremont Place, Denver CO. The PSIR discusses this adventure. Attached as Exhibits 2-9 are some photographs which illustrates which is happening at the gallery. The last Exhibit No. 9, illustrates that a law office has also opened in the building. This venture is run exclusively by Mr. Wright and would crumble if Mr. Wright were to be incarcerated.

     3. and 4.   THE NEED FOR THE SENTENCE TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT AND THE NEED FOR THE SENTENCE TO AFFORD ADEQUATE DETERRENCE:

As happens in so many of these cases, by cooperating with the government Wright has placed himself in a very precarious position. By cooperating Mr. Wright is now in a position were it is reasonable to believe that certain persons may seek the opportunity to harm Mr. Wright because of his cooperation. He also understands that if he is sentenced to home confinement and fails to successfully complete that sentence and any supervised release the Court imposes, that he would be sent to prison where people may well be waiting to harm him.

Mr. Wright has been on pretrial supervision since February 2, 2012 and has been totally compliant. He was originally required to be on home detention but the condition was modified and removed on April 27, 2012. He has regularly been tested for substance use with no positive results.

     5.   THE NEED FOR THE SENTENCE TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT:

A sentence of home confinement followed by a term of supervised release would mean

7

that Mr. Wright would be monitored for a substantial period of time. He has been in the community during the pendancy of this case and has in all respects conducted himself as a law-abiding citizen. Mr. Wright has been on pretrial supervision since February 2, 2012. He was originally required to be on Home detention but the condition was modified and removed on April 27, 2012. He has regularly been tested for substance use with no positive results.

6. THE NEED FOR THE SENTENCE TO PROVIDE THE DEFENDANT WITH EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE OR OTHER CORRECTIONAL TREATMENT:

The PSIR recommends both substance abuse treat and an offense specific evaluation and treatment based on Mr. Wright's 2004 felony conviction. The information provided in the PSIR does not contain any reason to believe that substance abuse treatment is called for in this case. Further, the attached Exhibit 10, albeit brief, does not suggest any basis for believing that offense specific treatment is called for. Please note that Paragraph 95 of the PSIR indicates that Mr. Wright has no apparent substance abuse or mental health issues.

7. OTHER REASONS WHY A SENTENCE OUTSIDE THE RANGE RECOMMENDED BY THE ADVISORY SENTENCING GUIDELINES IS APPROPRIATE:

Based on all circumstances in this case including the sentencing guidelines calculation and the government's expected Motion for downward adjustment and recommendation from probation that Mr. Wright be sentenced at the bottom of the guideline range, a request for a sentence of home confinement followed by a term of supervised release is consistent with the position of the government and probation.

## CONCLUSION

Based upon examination of all relevant factors, a sentence to home confinement with a term of supervised release would be sufficient to achieve the statutory sentencing objectives set forth at 18 U.S.C. § 3553(a). Mr. Wright respectfully requests that the Court sentence him to home confinement followed by a term of supervised release.

DATED: 8th day of November. 2012.

        Respectfully submitted,

        S+/Ronald J. Hahn
        Ronald J. Hahn
        333 W. Hampden Ave., Ste. 415
        Englewood, CO 80110

        Telephone #: 303-762-0445
        E-mail: rhahn3677@hotmail.com
        FAX Number: 303-761-2735
        Attorney for Defendant Clifford M. Wright

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of November 2012, a true and correct copy of the foregoing **MOTION FOR NON GUIDELINE SENTENCE PURSUANT TO TITLE 18, UNITED STATES CODE, SECTION 3553** was filed with the Clerk of Court using the CM/ECF system. Further a true and correct copy of this Motion, with attachments, has been placed in the U.S. Mail, Postage paid, and correctly addressed to the following:

U.S. Attorney's Office
District of Colorado
1225 17th St #700
Denver, Colorado 80202

        s/Andrea Marcotte-Slifka

9

Judge Krieger

My name is William Wright and I am the Father of Clifford Wright who is appearing before you for Probationary Judgment. Raising children is a monumental task on its own but, with the distractions of society glamorizing everything including knowing better then the parent on what "this" child needs. Computerization, and self gratification and a generation named by marketers, we end up here.

Clifford has not had it easy; he was deserted by his Mother more times than he could count. Bounced from family to family and finally here with me since 1979 at the age of 7.

We have gone through tough times, 4 babies mama's 7 children and finally, I say finally Clifford has seen the light and has found his niche. He owns his own business and is a reliable absent, but ever present parent who loves his children. Even though 3 daughters live in GA, he is in their lives as much as the other parent allows. His 11 year old son Tate lives with him here in Denver and is improving educationally every year. Tate has been here for 3 years. He is now in 6th grade, and definitely needs his Father around. My household is ill equipped to raise Tate as effectively as he. I love my family, however being born in 1950, I had a strict religious childhood overseen by a Baptist preacher and a devoted Mother and domestic. I know we would not gel if I were called upon to take over oversight of the child, nor do I desire to. I have personally worked 35 years and saved my entire life for MY retirement which does not include taking care of others children. I am at a point in my life that I can and do come and go as I please, and now I get to do those things I put off in the past. I am too strict for an 11 year old in these days and times. I careless about cell phones, X Boxes and having to be connected 24 hours a day. "You may never sit at my table and talk, text, or play games or twitter." If you are visiting me and sharing meals, that includes spending time with ME. Cliff is at a place in his life he needs to implement decisions concerning where his business is going and how to improve it for future income, and also needs to make educational decisions for all of his children, and be there for them, as I was for him. I think now he understands that children are for the rest of your life! You may come and go, but your kids are eternal! His children need him, and he them. He works his hardest for them, so removing him from their presence may produce additional problems. Please consider this when making your determination.

William R. Wright


EXHIBIT
1



Case No. 1:12-cr-00010-MSK   Document 739   filed 11/08/12   USDC Colorado   pg 12 of 19













**PROGRESSIVE THERAPY SYSTEMS, P.C.**
758 SHERMAN STREET DENVER, CO 80203
(303) 831-9344 ~ FAX (303) 831-9347
Metro North Office: 11172 N. HURON ST. UNIT 19 ~ NORTHGLENN, CO 80234
Metro South Office: 2305 E. ARAPAHOE RD. SUITE 215, CENTENNIAL, CO 80122

---

To- Ronald Hahn, Attorney
From- Ryan Hubbard, LCSW
Date- 10-24-12
Re- Clifford Wright

This is being written to document that Mr. Clifford Wright actively participated in Offense Specific treatment with this therapist from 9-6-2006 to 8-6-2007. During the duration of treatment Mr. Wright actively participated by offering others fairly insight feedback and he completed all assigned homework. His attendance was good and he kept his financial obligations to the agency. He discontinued treatment after being released from his parole sentence.

Exhibit 10